IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-CV-2658-RBJ

MT. HAWLEY INSURANCE COMPANY, an Illinois corporation,

　　Plaintiff,

v.

CREEK SIDE AT PARKER HOMEOWNERS ASSOCIATION, INC., a Colorado corporation,
MOUNTAIN VIEW HOMES II, LLC, a Colorado limited liability company,

　　Defendants.

---

## ORDER

---

This case comes before the Court on the Motion for Summary Judgment [docket #8] filed

by plaintiff Mt. Hawley Insurance Company ("Mt. Hawley"). Defendants Creek Side at Parker

Homeowners Association, Inc. (the "HOA") and Mountain View Homes II, LLC ("MV Homes")

oppose the motion.

**Facts**

MV Homes was the developer and builder-vendor of a residential development project

called Creek Side at Parker. Construction began in 2002 and was completed in September 2005.

During most of the construction period MV Homes was insured under Comprehensive General

Insurance policies issued by National Fire and Marine Insurance Company (3/31/03 to 3/31/04)

and by Mt. Hawley (3/31/04 to 3/31/06).

In December 2008, the HOA served a Notice of Defects on MV Homes. On June 1,

2009, the HOA brought a construction defect lawsuit against MV Homes and others in state

court, seeking damages allegedly caused by construction defects in the project. The HOA

alleged that subcontractors performed defective work that caused direct damage to the work as well as consequential damage to other parts of the project.  For example, the HOA alleged that faulty workmanship by AAAA Plumbing in the installation of sewer and water lines caused damage to the sewer and water lines as well as consequential damage in the form of concrete cracking and deterioration, asphalt cracking and deterioration, and water intrusion.

The HOA demanded a defense and indemnity from National Fire but not, initially, from Mt. Hawley.  National Fire provided a defense.  The underlying case had been pending for just over two years when, in July 2011, Mt. Hawley received notice of the suit and a demand for a defense and indemnification.  Mt. Hawley denied coverage.  Shortly thereafter National Fire settled the underlying HOA suit on behalf of MV Homes.  The settlement apparently reserved or assigned claims against Mt. Hawley for property damage that occurred during the period of Mt. Hawley's CGL policies.

Mt. Hawley then filed the present case seeking a declaration that its policies did not provide either a defense or indemnity with respect to the underlying lawsuit.  MV Homes counterclaimed for (1) a declaration of the parties' rights and obligations under the Mt. Hawley policies; (2) breach of contract, based upon Mt. Hawley's failure to provide or contribute to the defense and indemnity; (3) common law bad faith breach of the insurance contracts; and (4) statutory damages for insurance bad faith.

In the pending summary judgment motion Mt. Hawley argues that its policies do not cover the HOA's claims because faulty work is not an occurrence that would trigger coverage but, in any event, exclusions j(5), j(6), and m preclude coverage.  If there is no coverage obligation, Mt. Hawley argues, it also cannot be found to have acted in bad faith.

**Standard**

Summary judgment is appropriate when there is no dispute regarding material facts, and

the party is entitled to judgment as a matter of law.  *Montgomery v. Board of County*

*Commissioners of Douglas County*, 637 F.Supp.2d 934, 939 (D. Colo. 2009).  When applying

this standard, the court must view the evidence and draw all reasonable inferences therefrom in

the light most favorable to the party opposing summary judgment.  *Id.*  Jurisdiction in this matter

is based on diversity under 28 U.S.C. § 1332, and Colorado substantive law applies.  *Leprino*

*Foods Co. v. Factory Mutual Ins. Co.*, 453 F.3d 1281, 1287 (10th Cir. 2006).

**Conclusions**

Coverage Grant

The Mt. Hawley policies were written on a standard "Commercial General

Liability Coverage Form."  [#38-1].  The "Insuring Agreement" provides that Mt.

Hawley "will pay those sums that the insured becomes legally obligated to pay as

damages because of 'bodily injury' or 'property damage' to which this insurance

applies."  *Id.* at 4 (policy § I.A.1.a).  The insurance applies to property damage that

occurs during the policy period caused by an "occurrence."  *Id.* (policy § I.A.1.b).  An

"occurrence" is "an accident, including continuous or repeated exposures to substantially

the same general harmful conditions."  *Id.* at 16 (policy § V.13).

Faulty workmanship can constitute an occurrence that triggers coverage under a CGL

policy if (1) the property damage was not caused by purposeful neglect or knowingly poor

workmanship, and (2) the damage was to non-defective portions of the contractor's or

subcontractor's work or to third-party property.  *Greystone Construction, Inc. v. National Fire &*

*Marine Ins. Co.,*661 F.3d 1272, 1286–87 (10th Cir. 2011).  No one suggests that MV Homes or

3

its subcontractors purposefully or knowingly engaged in poor workmanship.  MV Homes relies

on the allegations of the HOA in the underlying suit for its contention that at least some of the

property damage was to non-defective portions of its or its subcontractors' work or to third-party

property.  That is sufficient to create a genuine issue of material fact for summary judgment

purposes.  *Greystone,* 661 F.3d at 1284.

Therefore, although Mt. Hawley disputes that its policies' coverage grants were triggered,

I will assume for present purposes that there was an occurrence that triggered coverage under the

policies.

Exclusions

Immediately following the "Insuring Agreement" the policy contains a list of 15

exclusions, labeled exclusions a through n. [#38-1 at 4–8].  Mt. Hawley relies on exclusions j(5),

j(6) and m.  [1]

> Exclusions j(5) and j(6) exclude coverage for property damage to
>
> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> . . .
>
> Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

*Id.* at 7.

Exclusion j(5) applies to damage to the work being done by the insured during the course

of the insured's work, not to damage that occurred after operations have ceased.  *Advantage*

*Homebuilding, LLC v. Maryland Cas. Co.*, 470 F.3d 1003, 1010–11 (10th Cir. 2006).  For

---

[1] This is not my first foray into the mind-numbing task of interpreting and applying these exclusions in the construction defect context, nor, I fear, will it be the last.  *See American Family Ins. v. Apartment Builders, LP,* No. 11-cv-1380, 2012 WL 5332201, at *4, 5 (D. Colo. Oct. 29, 2012).

present purposes I will assume that at least some of the damage occurred during the course of the insured's work but was not to the work being done by the insured or its subcontractors. Accordingly, for present purposes I conclude that exclusion j(5) does not completely bar the coverage claim.

Exclusion j(6), however, has been interpreted to "exclude 'property damage' that *directly or consequentially* occurs from the faulty workmanship of the insured and its contractors/subcontractors (i.e., work that 'was incorrectly performed') while the work is ongoing." *Advantage Homebuilding,* 470 F.3d at 1012 (emphasis added).  That exclusion, as interpreted, broadly excludes all property damage that occurred while the work was ongoing and was the result of faulty workmanship.

As indicated, exclusion j(6) contains an exception for property damage included in the "products-completed operations hazard."  The "products-completed operations hazard" is found in the definitions section of the standard form.  It includes property damage arising from the insured's or its subcontractors' work except, as pertinent here, "work that has not been completed or abandoned."  [#38-1 at 16] (policy § V.16(2)).  Thus, "[t]he express exception to exclusion j(6) . . . allows an insured to recover consequential damages that arise out of his or her faulty workmanship after the completion of the work." *Advantage Homebuilding,* 470 F.3d at 1012.

The court's example in *Advantage Homebuilding* says it best.  After a homebuilder erects walls and completes the roof, and while he is working on the interior, the poorly installed roof leaks, and the partially completed parquet floors are damaged.  Replacement of the roof which was a direct result of the faulty workmanship would be excluded.  However, damage to the

parquet floors, which was a consequence of the faulty and completed workmanship on the roof, would be covered, because of the exception to the exclusion. *Id.*

If I could stop there I would conclude that exclusion j(6) does not necessarily bar coverage in this case. There is a genuine dispute of fact as to whether MV Homes' faulty but completed work caused consequential damage to property other than the property on which it performed the faulty work. Indeed, I would deny the pending motion, because I would conclude that exclusion m has no application here.[2]

However, in this instance, I cannot stop there. The exception that rescued MV Homes from exclusion j(6) was for property damage included in the "products-completed operations hazard." The Mt. Hawley polices contain an endorsement to the standard form that provides, "[t]his insurance does not apply to 'bodily injury' or 'property damage' included within the 'products-completed operations hazard'." [#38-1 at 18]. Mt. Hawley argues that this endorsement negates the exception to exclusion j(6). I agree.

MV Homes advances two arguments in opposition. First, it contends that the endorsement is in conflict with the exception to the exclusion, thereby creating an ambiguity in the policy that must be construed in favor of coverage. *See Simon v. Shelter Gen. Ins. Co.,* 842 P. 2d 236, 240 (Colo. 1992). In *Simon,* which incidentally did not involve application of the exclusions in a construction defect context, exclusion "a" concerning contractually assumed liability contained an exception for warranties of fitness or quality and the warranty that the work would be performed in a workmanlike manner. However, the policy contained an endorsement providing that coverage did not extend to property damage included in the "completed operations hazard," which included property damage arising out of reliance on a representation or warranty.

---

[2] Exclusion m excludes damage to "impaired property or property not physically injured." [#38-1 at 7]. This case involves property that was physically injured and there is, at a minimum, a genuine dispute of fact as to whether any of the damage would fall within the policy's definition of "impaired property."

6

The Court held that these provisions were in conflict. *Id.* at 240–41.  The Court construed the inconsistent provisions in favor of coverage. *Id.* at 242.

I cannot, in good conscience, find an ambiguity in the Mt. Hawley policies.  The endorsement very specifically states that "[t]his insurance does not apply to 'bodily injury' or 'property damage' included within the 'products-completed operations hazard'." [#38-1 at 18]. It is written in the precise language of the exception to exclusion j(6) for "'property damage' included in the 'products-completed operations hazard.'" [#38-1 at 7].  It is true that what the exception in the standard form's exclusion gave the endorsement took away.  Nevertheless, when the taking away is done in plain, unambiguous language, in a contract agreed between sophisticated commercial parties, I would have to strain the language to find that there is an ambiguity that negates the exception.

Thus far I have found that exclusion j(6) excludes from coverage all direct and indirect damages that occur while work is ongoing.  For the sake of argument, I presume that MV Homes has alleged damages that occurred within the Mt. Hawley policy period but after work was completed.  Such damages would not be removed from coverage by exclusion j(6).  However, the insurance policy defines damages that occur after all work has been completed to be within the products-completed operations hazard. [#38-1 at 16–17].  Furthermore, as discussed above, the endorsement effectively removed the products-completed operations hazard from the policy. [#38-1 at 18].  Consequently, I find that damages that occurred after all work was completed are also not covered.

Alternatively, MV Homes argues that interpreting the endorsement in that manner would render the coverage of the policy illusory and violate public policy, because it "would in effect allow the insurer to receive premiums when realistically it is not incurring any risk of liability."

*O'Connor v. Proprietors Ins. Co.,* 696 P.2d 282, 285 (Colo. 1995).  Technically, of course, that is not true here.  As Mt. Hawley counters, the policy provides coverage for personal injury, advertising injury and medical payments that are not affected by the products-completed operations hazard endorsement.  Reply [#40] at 9.

I acknowledge, however, that MV Homes' argument is not entirely without force.  MV Homes is, after all, a homebuilder.  If there is no coverage for liability for property damage caused by its negligence or the negligence of its subcontractors while doing what the business exists to do, one has to wonder how much meaningful coverage MV Homes received for its money.

However, I return to the fact that these insurance policies were negotiated between two sophisticated commercial entities.  MV Homes was capable of obtaining coverage that did apply to the HOA's claims, as is evident from the fact that it obtained both a defense and indemnity from National Fire.  It switched to Mt. Hawley and purchased coverage that, between the exclusions and the endorsement, excluded such coverage.  Presumably its premium payments reflected the effect of the endorsement as well as the other policy provisions.  In any event, as much as I agree that insurance policies should always be construed, where possible, in favor of coverage, I cannot find ignore the fact that in this instance, a sophisticated purchaser of insurance agreed to what the plain language of the endorsement compels.

Likewise, I can find no basis to conclude that Mt. Hawley acted in bad faith.  MV Homes did not lack for a defense.  By the time it gave notice of the underlying suit to Mt. Hawley, National Fire had been defending the case for approximately two years.  Thanks to National Fire, the underlying case settled shortly thereafter.  Mt. Hawley denied a duty to, retroactively, contribute to the defense or to provide indemnity coverage.  However, while I do not agree with

several of the arguments advanced by Mt. Hawley in this litigation, I ultimately do agree that there was no coverage under these particular policies. Therefore, it was not unreasonable for Mt. Hawley to have denied coverage, or to have commenced this declaratory judgment action; and there is no basis for a finding of common law or statutory bad faith.

### ORDER

Plaintiff's motion for summary judgment [#38] is GRANTED. The Court declares that the subject insurance policies do not provide coverage for the faulty workmanship, if any, of MV Homes or its subcontractors on the Creekside at Parker project. As the prevailing party Mt. Hawley is awarded its reasonable costs pursuant to Fed. R. Civ. P. 54(d) and D.C.Colo.LCivR 54.1.

DATED this 8th day of January, 2013.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

9